206 N.J. Super. 523 (1985)
503 A.2d 331
DEPARTMENT OF THE PUBLIC ADVOCATE, DIVISION OF RATE COUNSEL, APPELLANT,
v.
NEW JERSEY BOARD OF PUBLIC UTILITIES AND MIDDLESEX WATER COMPANY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1985.
Decided December 9, 1985.
*524 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Stephen B. Genzer, Deputy Public advocate, argued the cause for appellant (Alfred A. Slocum, Acting Public Advocate, attorney).
Richard B. McGlynn argued the cause for respondent Middlesex Water Company (Stryker, Tams & Dill, attorneys; Richard B. McGlynn, of counsel; Mark L. Mucci, on the brief).
Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for respondent Board of Public Utilities (Irwin I. Kimmelman, Attorney General, attorney).
The opinion of the court was delivered by LONG, J.A.D.
On this appeal the Public Advocate, Division of Rate Counsel (Public Advocate) challenges a decision of the Board of Public Utilities (Board) altering the terms of a settlement agreement which had resolved the issues in a pending rate case. Because we have concluded that Public Advocate's challenge is meritorious and that the decision of the Board was arbitrary and unreasonable, we reverse.
The case arose on May 21, 1984 when the Middlesex Water Company, ("Middlesex") a public utility in the State of New Jersey, providing water to customers in parts of Middlesex County, filed a petition with the Board to increase its rates by 20.2% or $3,768,674. Middlesex also served the Public Advocate, *525 with a copy of the petition as a representative of the public interest. N.J.S.A. 52:27E-18.
On June 11, 1984, pursuant to N.J.S.A. 48:2-21(d) the Board suspended the effective date of the new rates for four months. (Thereafter the rates were again suspended until early 1985). The Board transmitted the matter to the Office of Administrative Law for determination as a contested case. N.J.S.A. 52:14F-1 et seq. A public hearing was held on August 1, 1984. During the period from the filing in June through the hearing and into October 1984 the parties met on several occasions to try to resolve the case. In addition to the typical rate case issues an additional issue was raised by the Board concerning some $400,000 of "overearnings" or "non-recurring" revenues by Middlesex. The parties agreed to attempt to resolve the overearnings issue once all other issues had been put to rest. Throughout these discussions Middlesex took the position that the overearnings issue was not within the scope of the rate case and questioned the legality of such a review. It was agreed by the parties that Middlesex required a revenue increase of $1,185,000.
While the Middlesex matter was proceeding, the issue of overearnings had also arisen in a rate case filed by the Elizabethtown Water Company (Elizabethtown). On September 24, 1984 in In the Matter of the Petition of Elizabethtown Water Co. the Board determined that Elizabethtown had overearned in prior years and to compensate, although it was entitled to a substantial rate increase, Elizabethtown would not be allowed to implement the new, higher rates until approximately February 1, 1985 in order to "use up" the overearnings.
Middlesex, while aware of the Board's decision in the Elizabethtown matter, agreed to settle its case. Agreement was reached with the Board staff on an overearnings amount of $200,000 rather than the staff's alleged $400,000. The parties agreed to effectuate the refund by postponing the effective date of Middlesex's increased rates for two months until December *526 15, 1984. Although agreeing to this, Middlesex continued to object to the legality and method of offset used by the Board in Elizabethtown. Since Middlesex's costs are affected by Elizabethtown's rates, Elizabethtown being a supplier of Middlesex, it was also agreed that the impact of Elizabethtown's rate increase on Middlesex would be permitted to be recovered upon implementation of Elizabethtown's delayed increase. A formal, written stipulation containing these terms was drafted. Language was proposed by Middlesex reserving its right to appeal the overearnings issue but that Board Staff and the Public Advocate insisted upon a stipulation which would resolve the entire case. Thus, that language was excised from the stipulation. The settlement was forwarded to the Office of Administrative Law on October 9, 1984 and was adopted in an initial decision issued October 10, 1984. The Board approved the stipulation at its October 25, 1984 meeting and ultimately entered an order confirming the approval on November 7, 1984.
On October 25, 1984 Elizabethtown filed notice of appeal and a motion for interim relief to the Appellate Division with respect to the Board's order in its case. On October 31, 1984 this court granted relief, ordering that, as soon as tariffs could be implemented, the increased rates could take effect, subject to refund pending the appeal. Following this ruling on the Elizabethtown motion, Middlesex requested a conference with the Board's staff and the Public Advocate to determine whether the parties would agree to modify the terms of the settlement to conform to the Appellate Division's order in Elizabethtown. Middlesex requested an immediate implementation of its tariffs on an interim basis to reflect the increased water costs resulting from the court's interim order in Elizabethtown. On this issue the parties agreed to permit an immediate revision in Middlesex's tariffs to allow Middlesex to increase its rates to cover its increased costs due to the Elizabethtown rate increase, subject to refund pending appeal. In addition, Middlesex requested that it receive the same treatment on the overearnings *527 issue as the court had ordered the Board to afford to Elizabethtown. This would effectively relieve Middlesex of the portion of the stipulation in which it agreed to an adjustment in rates for past overearnings.
Middlesex filed a letter motion with the Board summarizing its position and the Public Advocate filed its response in a letter of November 8, 1984. At its November 9, 1984 meeting by a 2-1 vote the Board ruled that the impact of the Elizabethtown case was such that fundamental fairness required it to treat Middlesex the same way the court treated Elizabethtown. Subject to the conditions set forth in Middlesex's letter motion, the Board permitted the rates it had previously approved to go into effect as of November 9 rather than on the previously set December 15th date. An order reflecting this ruling was entered on November 9 which stated:
The majority of the Board concludes albeit reluctantly, that fundamental fairness requires us to afford similar treatment to petitioner than that was afforded to Elizabethtown.
....
Based solely on the Court's mandate that full rates could be implemented by Elizabethtown during the pendency of that matter, the majority of the Board is constrained to likewise permit petitioner to place into effect the rates approved by this Board ... by Order of November 7, 1984.
....
We emphasize that we are dealing here with the equitable application of Court mandated relief; in no way do we wish to inhibit future parties, especially Rate Counsel from aggressively pursuing stipulations in rate matters.
On the same date the Public Advocate filed a notice of appeal to this court and a motion for interim relief. The motion for stay was denied on November 9, 1984.
The heart of the Public Advocate's argument on this appeal is that the Board abused its discretion in modifying an essential term of the stipulation without giving the parties the opportunity to modify the entire settlement or litigate the case. Middlesex argues that under the unusual circumstances presented by *528 this case the Board's order of modification was an appropriate exercise of its administrative authority. Alternatively, Middlesex urges that the Board did not in fact set aside one of the terms of the stipulation, but reconsidered its final order and granted relief therefrom. The Board maintains that, by its actions, it appropriately balanced the equities so as to accord the same provisional treatment to two similarly situated utilities.
We agree with the Public Advocate's perception of this case. In our view the beginning point of this analysis is the strong public policy in this state in favor of settlements. Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App.Div. 1983), certif. den. 94 N.J. 600 (1983). The point of this policy is not the salutary effect of settlements on our overtaxed judicial and administrative calendars (although this is an undeniable benefit) but the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of a settlement wherever possible. It follows that any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced. That is what we have here.
The settlement in this case was clear and straightforward. By its terms it represented "compromise by the parties hereto with respect to vigorously contested and disputed issues." It stated in part:
The parties hereto initially agreed that the $1,185,000 of additional revenues to which the Company is entitled was to be reflected in rates to become effective October 15, 1984, or as soon thereafter as the Board acts on this matter. The parties hereto further agree that the Company experienced what it contends to be nonrecurring revenues during the year following July 1, 1983, the effective date of rates set in a prior rate case. For the purposes of this Stipulation only, the Company agrees that the effective date of the rate increase stipulated to herein shall be deferred until December 15, 1984.
For the purposes of this Stipulation only, the postponement of the effective date reflects a recognition that the said non-recurring revenues should be *529 absorbed by the Company by the delay in the effective date of new rates for a two-month period. The parties hereto agree that the said non-recurring revenues causing the postponement of the effective date constitute some $200,000. Accounting for the absorption will be accomplished by comparing revenue from consumption priced at proposed rates for the October 15-December 15 period. The Company agrees that in the event deferral of the effective date does not entirely absorb the $200,000, any remaining said non-recurring revenues may be addressed in the Company's next rate proceeding.
....
CONCLUSION:
An essential element of this agreement is that the Company is entitled to receive the agreed-upon amount of rate relief for services rendered on and after October 15, 1984, or as soon thereafter as the Board acts on this matter. However, for the purposes of this Stipulation only, the effective date of the tariffs has been postponed to December 15, 1984. The positions agreed to by the parties represent a compromise by the parties hereto with respect to vigorously contested and disputed issues in this case....
....
Any modification of the terms of this Stipulation without the express written consent of all parties hereto will render this Stipulation null and void.
The undersigned parties hereto stipulate and agree to the foregoing and respectfully recommend the approval and adoption thereof by the Board.
Moreover the right to litigate the overearnings issue was specifically excised from the agreement.
Middlesex argues that this was an extraordinary situation in that it agreed to the offset of overearnings only because of the Board's decision in the Elizabethtown case. When Elizabethtown appealed and was granted a stay in the form of an immediately effective rate increase, Middlesex maintains that it faced a dilemma in that it would have been unable to recoup the revenues lost by the delayed rate increase if the court decided in Elizabethtown's favor.
But this is exactly what Middlesex bargained for. When Middlesex signed the stipulation delaying its rate increase for two months, it knew or should have known that Elizabethtown had the right to appeal. The Elizabethtown decision was dated September 24, 1984. Middlesex entered into the stipulation on October 5, 1984, leaving more than a month during which *530 Elizabethtown was free to file an appeal. Middlesex agreed to the settlement despite this possibility. It was only after Elizabethtown actually filed an appeal and was granted a stay in the form of an immediately effective rate increase that Middlesex, desiring similar treatment, requested the Board to modify the stipulation to its advantage.
Indeed, at oral argument counsel for Middlesex made the observation that it was the action of this court in granting interim relief which changed the circumstances of the case so as to justify modification of the stipulation of settlement. We think he hit the nail on the head in focusing on the stay but that he was wide of the mark in concluding that it altered the status quo. In our opinion what occurred here is that the grant of interim relief to Elizabethtown gave Middlesex second thoughts about the possibility of Elizabethtown's success on the merits of the overearnings issue. But second thoughts are entitled to absolutely no weight as against our policy in favor of settlement. Moreover Elizabethtown's success on appeal was always a possibility which Middlesex should have foreseen. There is simply nothing which was neither unexpected nor unexpectable in this case which would justify tinkering with the stipulation. As our courts have often stated:
Subsequent events which should have been in contemplation of the parties as possible contingencies when they entered into the contract will not excuse performance. Newark v. North Jersey Dist. Water Supply Comm'n, 106 N.J. Super. 88, 105 (Ch.Div. 1968), aff'd o.b. 54 N.J. 258 (1969). [Schiff v. Schiff, 116 N.J. Super. 546, 561 (App.Div. 1971)].
The Board, contending that in modifying its final decision it appropriately balanced the equities so as to accord the same provisional treatment to two similarly situated utilities under its supervision, ignores several essential points. First, while Elizabethtown chose to fully litigate the overearnings issue, Middlesex entered into a settlement agreement which specifically covered it. In so doing, Middlesex obviously assessed its down side risk and determined that enduring the financial and other rigors of the litigation process, with no guarantee of success on the merits in the final analysis, was not a risk it wished to take. *531 This is perfectly legitimate thinking but it ought not to entitle the settlor to parity with another who has borne the laboring oar in a litigation and met with success. We see absolutely no inequity in granting relief only to a party who has withstood the rigors of the litigation process. See Willis v. Dept. of Cons and Ec. Div., 55 N.J. 534 (1970). We find this reason given by the Board as a basis for modifying the agreement not to outweigh our public policy favoring settlement.
Moreover, this is not a case in which the Board can suggest that the parties left the resolution of this issue open. Theoretically an agreement could be silent on the question of the effect of modification of one of its provisions, leaving an adjudicative body free to assess the modification in terms of the settlement as a whole and to determine whether the rest of the agreement should stand. That is not the case here. Here the stipulation provides:
Any modification of the terms of this Stipulation without the express written consent of all parties hereto will render this Stipulation null and void.
This clause was designed specifically to protect the interests of the parties and to govern a situation such as the one at bar. We believe that it should be given the force and effect it was intended to have.
As we have noted, Middlesex also argues that the Board did not in fact set aside one of the terms of the stipulation but reconsidered its final order. While the Board does have the authority to order a rehearing and extend, revoke or modify an order made by it, N.J.S.A. 48:2-40; Township of Deptford v. Woodbury Terrace, Sewerage Corp., 54 N.J. 418 (1969) such power must be exercised reasonably. This does not, in our view, include the authority to modify the stipulation in contravention of the express terms of the agreement over the objection of one party. The appropriate course was to enforce the *532 agreement as written. Modification was improper and cannot stand.
The decision of the Board is reversed.[1]
NOTES
[1] During the pendency of this appeal, in a split decision we reversed the Board's determination to defer an authorized rate increase in order to offset prior overearnings by Elizabethtown because that action constituted prohibited retroactive ratemaking. In the Matter of the Petition of Elizabethtown Water Company for an Increase in Rates, 205 N.J. Super. 528 (1985).