**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4758-16T3

ED-GEL, LLC (d/b/a TRIMIX
LABORATORIES, LLC),

    Plaintiff-Appellant,

v.

KRS GLOBAL BIOTECHNOLOGY,
INC.,

    Defendant-Respondent.

_____

        Argued April 23, 2018 — Decided August 14, 2018

        Before Judges Sabatino and Ostrer.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Docket No.
        L-4492-15.

        Michael J. Confusione argued the cause for
        appellant (Hegge & Confusione, LLC, attorneys;
        Michael J. Confusione, of counsel and on the
        brief).

        Robert S. Shiekman argued the cause for
        respondent.

PER CURIAM

    Plaintiff ED-Gel, LLC, appeals from a trial court order
enforcing a settlement of its breach of contract action against

defendant KRS Global Biotechnology, Inc. We conclude that plaintiff's counsel had both apparent and actual authority to enter into a binding settlement agreement. We therefore affirm.

Plaintiff alleged it owns intellectual property related to erectile dysfunction treatments, and licensed defendant to compound and sell some of its formulas. According to plaintiff, defendant prematurely terminated the contract. Plaintiff sought monetary damages for unpaid commissions, lost income, and the cost of products that defendant received but did not pay for. Plaintiff also sought a list of the prescribing physicians and patients who received the medication, and related details.

The parties eventually filed cross-motions for summary judgment. On the return date, counsel for the parties obtained the court's permission to engage in settlement discussions rather than oral argument. Plaintiff's managing member, Thomas J. Harkins, Jr., was present in court. Defendant's principal was in contact with counsel by telephone, as he was traveling.

What transpired thereafter is the subject of certifications of defendant's counsel, Robert S. Shiekman; plaintiff's counsel, James Herman; and Harkins. Brian Herman, who served as plaintiff's co-counsel, did not file a certification.[1] We note at the outset

---

[1] For convenience, we refer to the Hermans by their first names, and mean no disrespect in doing so.

that James and Harkins certified that their statements were "true to the best of [their] personal knowledge and belief."

James asserted that a settlement was ultimately reached, except regarding the method of payment, specifically, whether a lump sum payment would be made within thirty days, or two payments backed by a personal guaranty of defendant's president. James reported the status of the negotiations to the court, which carried the motion to a future date, awaiting word whether the final issue was resolved. James stated that Brian and Harkins went to lunch to celebrate the settlement. Meanwhile, he and Shiekman agreed outside the courthouse there would be a single payment after receiving a communication on the payment issue from defendant's vice-president.

James said he prepared a draft written agreement "in accordance with what I believed were the full and final settlement terms" and forwarded it to Harkins and Shiekman for execution. In addition to the monetary terms, it included a confidentiality provision and a general release. Defendant's principal signed it and transmitted payment, which James held in escrow.

Harkins refused to sign. He contended his attorneys pressured him to settle. He admitted that he agreed at the courthouse to the financial terms of the settlement. He stated, "After hours of repelling my attorneys' incessant pressure, I accepted an offer

from opposing counsel." However, "I did not consider acceptance of price a complete agreement because I had other claims from my lawsuit I expected my attorneys to argue for me."

He stated that he wanted his attorneys to secure defendant's agreement to provide physician and patient information. He acknowledged he did not bring it up at the courthouse, blaming James for allegedly not telling him that he had to raise it then. Harkins also contended a confidentiality provision was never mentioned during the negotiations. Thus, he objected to its inclusion in the agreement, as well as a general, as opposed to a limited, release. He also objected to the "attorney advice" provision on the ground that he did not have a full opportunity to review and comment on the agreement.

Shiekman stated that he and plaintiff's counsel "reached settlement terms resolving" the case; "the terms of the Settlement Agreement were fully negotiated by counsel for the parties"; and the "[t]he Settlement Agreement included three (3) material terms" — which were, first, that defendant would make a timely payment to plaintiff, defendant would execute the settlement agreement, and plaintiff would do so as well. In a second certification, Shiekman asserted that James's draft agreement "mirrored, exactly, the settlement terms that were agreed upon in Court," although Shiekman does not explicitly address the confidentiality or

release provisions. He reiterated that the agreement included the "three (3) material terms" just described.

In granting defendant's motion to enforce the settlement, the trial court relied on Harkins's concession that he accepted an offer of settlement, and the principle that an oral settlement agreement can be enforceable. The court entered an order declaring that James's draft settlement agreement was binding on the parties.

On appeal, plaintiff contends that the existence of a settlement, and its material terms, were both genuinely disputed. Defendant responds that both attorneys agreed they reached a settlement, which the draft writing embodied.

Our system strongly values the settlement of litigation, and we "'strain to give effect to the terms of a settlement wherever possible.'" Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)). The burden to prove a settlement agreement is borne by the party seeking to enforce it. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997).

"On a disputed motion to enforce a settlement, as on a motion for summary judgment, a hearing is to be held to establish the facts unless the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to

permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party."  Id. at 474-75.  And, absent an evidentiary hearing by the trial court, we review de novo whether a binding settlement was reached.  Cf. Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010) (stating that appellate court reviews grant of summary judgment de novo, applying the same standard as the trial court).

As a threshold issue, we observe, that, strictly speaking, the "certifications" of Harkins and James are not competent evidence.  Rule 1:4-4(b) requires the following language to precede the affiant's signature: "'I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.'"  Absent such a verification, a certification has no evidentiary value.  Pascack Cmty. Bank v. Universal Funding, LLP, 419 N.J. Super. 279, 288 (App. Div. 2011).  Rather than follow the Rule, Harkins and James certified that "the statements made herein by me are true to the best of my personal knowledge and belief . . . ."  See Jacobs v. Walt Disney World Co., 309 N.J. Super. 443, 454 (App. Div. 1998) (stating that factual assertions based merely upon information and belief are inadequate under Rule 1:6-6).  However, as defendant does not object to James's and Harkins's certifications on this ground, we shall consider them.

A-4758-16T3

Even so, we discern no genuine dispute that James and Shiekman reached an oral agreement in the courthouse, as supplemented shortly thereafter with a resolution of the manner of payment issue. The two attorneys agreed the draft that James forwarded to Shiekman embodied their agreement, notwithstanding that neither attorney expressly asserted that he agreed to a general, as opposed to a limited release, and to a broad confidentiality provision.

Since the lawyers reached agreement, the dispositive issue is whether James had authority to settle the case according to the terms in his draft agreement. "[A]n attorney for a private party may settle a lawsuit based on actual or apparent authority to do so." Seacoast Realty Co. v. W. Long Branch Borough, 14 N.J. Tax 197, 202-03 (Tax 1994); see also Amatuzzo, 305 N.J. Super. at 475.

Actual authority may be express or implied. Newark Branch, N.A.A.C.P. v. W. Orange Twp., 786 F. Supp. 408, 423 (D.N.J. 1992). Implied authority exists when "an agent is authorized to do what he may reasonably infer the principal desires him to do in light of the principal's manifestations and facts as he knows or should know them when he acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548-49 (App. Div. 1987). "The focus is on the agent's reasonable perception of the principal's manifestations toward him." Newark Branch, N.A.A.C.P., 786 F. Supp. at 424.

Apparent authority arises when "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client." Amatuzzo, 305 N.J. Super. at 475; see also LoBiondo v. O'Callaghan, 357 N.J. Super. 488, 497 (App. Div. 2003) (stating that creation of apparent authority is based on "the actions of the principal, not the alleged agent"). Thus, implied actual authority depends on the agent's reasonable perceptions of the principal's actions; apparent authority depends on a third-party's perceptions.

James had actual authority to settle. We assume for purposes of this appeal that Harkins did not expressly authorize James to agree to a confidentiality provision or a general release, or to omit a provision on physician and patient lists. Yet, James's authority was implied. Harkins was present at the settlement negotiations. He was aware James was negotiating with Shiekman, and Harkins permitted him to do so. Although Harkins complains that his attorney pressured him, he concedes that he relented. He concedes that he approved the financial terms of the settlement. He did not raise the issue of physician and patient lists during the courthouse sessions, nor did he expressly impose any explicit restrictions on the positions James took in his discussions with

Shiekman. He also does not claim he raised any objection when the attorneys informed the court that an agreement was reached, but for the open issue as to payment terms. Thus, it was reasonable for James to infer that Harkins gave him the authority to settle.

James also had apparent authority to settle. Regardless of the pressure he may have felt, Harkins sent James to the settlement negotiations with Shiekman. "In New Jersey it has been held that sending an attorney to a settlement conference presumptively establishes that the attorney has authority to settle . . . ." Seacoast, 14 N.J. Tax at 204. Apparent authority may exist where the principal "places the attorney in a position where 'a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question.'" Id. at 204-05 (quoting United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 74 (1963)). Harkins's presence at the negotiations that James spearheaded would suggest to Shiekman that James had the authority to reach a settlement.

In sum, a binding settlement was reached, which was embodied in the written agreement that James drafted. The trial court did not err in enforcing it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4758-16T3