**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3792-17T1

STATEWIDE COMMERCIAL
CLEANING, LLC,

 Plaintiff-Appellant,

v.

FIRST ASSEMBLY OF GOD,

 Defendant/Third-Party Plaintiff,

v.

MERCER INSURANCE COMPANY
OF NEW JERSEY, INC.,

 Third-Party Defendant-
 Respondent,

and

STEVE BAGLIVO,

 Third-Party Defendant.

_____

Argued March 5, 2019 – Decided March 21, 2019

Before Judges Fisher and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-5570-13.

Scott E. Becker argued the cause for appellant.

J. Elliot Stolz argued the cause for respondent (Stolz & Associates LLC, attorneys; J. Elliot Stolz, on the brief).

PER CURIAM

Plaintiff Statewide Commercial Cleaning, LLC (Statewide) appeals from a Law Division order: (1) denying Statewide's motion to vacate the umpire's award and remand the matter to the umpire for consideration of Statewide's appraisal; (2) granting third-party defendant Mercer Insurance Company of New Jersey Inc.'s[1] (Mercer) cross-motion to declare the umpire's award valid, enforceable and final; (3) requiring Statewide to pay Mercer $78,052.90 as specified in the umpire's award; (4) entering judgment against Statewide in the amount of $78,052.90 to be docketed if payment was not made within fifteen days; and (6) dismissing the action with prejudice as provided for in the mediation agreement. Statewide also appeals from an order denying reconsideration. We affirm.

---

[1] Mercer was improperly pled as Mercer Insurance Company of New Jersey/Mercer Insurance Company Member of the Mercer United Fire Group/Mercer Insurance Company of Pennington, NJ.

A-3792-17T1

In August 2011, the church building owned by defendant/third-party plaintiff First Assembly of God (First Assembly) was damaged in a fire. Statewide was hired to perform the initial cleanup and secure the premises against further damage by the elements, and eventually, to handle the restoration and reconstruction. Statewide asserts the City of Millville mandated the process included bringing the structure up to current building code requirements. Two years later, Statewide filed suit against First Assembly seeking $1,855,412.11 in unpaid construction costs. In response, First Assembly filed an answer; a counterclaim for fraud; a third-party complaint for indemnification against Mercer; and a third-party complaint for fraud against third-party defendant Steve Baglivo, a principal of Statewide. First Assembly was subsequently granted leave to amend the first count of the third party complaint to include a claim for bad faith.

Following several discovery extensions, Mercer moved for summary judgment, and alternatively for partial summary judgment to strike the first count of First Assembly's complaint, and other relief not pertinent to this appeal. The trial court denied Mercer's motion. The trial court also denied Mercer's motion for reconsideration of the denial of partial summary judgment as to the first count of First Assembly's complaint and other non-pertinent relief. We

denied Mercer's motion for leave to appeal those orders. Due to the discovery extensions, the trial date was adjourned several times.

The parties subsequently agreed to submit the matter to mediation and entered into a Mediation Settlement Agreement (the Agreement). Under its terms, the parties agreed to the following: (1) in exchange for $50,000, which represented First Assembly's attorney's fees and costs, First Assembly dismissed all claims against Statewide and assigned its rights under its insurance policy with Mercer (the Policy) to Statewide; (2) Mercer agreed to pay Statewide $550,000 "for a total undisputed payment" of $1,050,000; (3) the appraisal process set forth in the Policy would control and be followed; (4) if the two appraisers were unable to agree on an umpire, the mediator was empowered to select the umpire; (5) the appraisal process was to begin immediately and be completed in full by December 31, 2016; (6) First Assembly agreed to dismiss all non-contractual claims with prejudice; (7) all parties agreed to dismiss all claims except the contract claims under the Policy without prejudice; (8) the parties agreed to dismiss the contractual claims with prejudice upon completion of the appraisal process; (9) all claims for fraud asserted by Mercer against Statewide and Baglivo were to be dismissed; (10) all claims against Baglivo personally were to be dismissed; (11) First Assembly assigned all its rights

A-3792-17T1

under the Policy to Statewide for purposes of proceeding with the appraisal process; (12) First Assembly and Statewide agreed any monies awarded to Statewide as a result of the appraisal process would be solely for the benefit of Statewide; and (13) Mercer agreed to pay the mediator's fee in full.

The purpose of the appraisals was to evaluate the loss suffered by First Assembly. Section E (3) of the Policy sets forth the appraisal process:

> The appraisers are to set the amount of the loss or value. If the appraisers fail to agree within a reasonable time, they are to submit their differences to the umpire. Written agreement set by any two of these three persons sets the amount of loss or value.

Statewide hired Todd Arsenault to be its appraiser, Mercer hired Jerry Provencher to be its appraiser, and the parties agreed on Timothy Woods as the appraisal umpire. Although the Agreement stated the appraisal process was to begin immediately and be completed by December 31, 2016, neither party submitted an appraisal to the umpire by that date. In spite of that deadline, the parties were unable to begin the appraisal process until March 24, 2017, because of delays in the dismissal of First Assembly's unassigned claims.

On June 7, 2017, Arsenault promised to submit his appraisal to the umpire shortly. One week later, the umpire emailed Arsenault, advising him: "I have not received your loss value. Please expedite delivery. I am in receipt of

[Provencher's] loss value and supporting brief." On June 20, 2017, Arsenault promised to submit his appraisal no later than June 30, 2017. Arsenault failed to do so.

Due to Arsenault's failure to submit his appraisal as promised, Provencher sent an email to the umpire on July 5, 2017, requesting the umpire render "a decision based on the material submitted to date." An almost identical email was sent to the umpire on July 21, 2017. The umpire replied that he would contact Arsenault to set a deadline for submission.[2] On the same day, the umpire emailed Arsenault, advising him:

> This panel awaits your loss value . . . . Deadlines . . . have come and gone without receipt of your position paper/brief or loss value. . . .
>
> In the event your loss value is not received by end business on July 28th, this panel reserves the right to take all necessary actions needed to arrive at a fair loss value. Please note, an award signed by any TWO of the three party panel is a binding award. I hope you elect to participate in this panel[']s effort to find a reasonable value.

Despite several additional emails, Arsenault did not submit an appraisal on behalf of Statewide. On August 9, 2017, the umpire emailed Baglivo, advising that despite giving Arsenault multiple opportunities to submit his

---

[2] Arsenault was copied on each of these emails.

appraisal, he had not done so. The umpire warned Baglivo he would make his decision without an appraisal on behalf of Statewide. During the following week, the umpire spoke with both Baglivo and Statewide's counsel by telephone regarding submission of the missing appraisal. This led to an August 15, 2017 email to Arsenault and Provencher, which stated:

> Due to [Arsenault's] inability to provide his loss value on established dates and . . . subsequent silence, I have reached out to representatives of [Statewide] to advise them that their interests were not being represented during this appraisal.
>
> I [spoke] with [Statewide's counsel] . . . [and he] stated that he spoke with [Arsenault] and asked that this panel provide additional time to allow submission of his loss value.
>
> As you are both aware, we have extended this courtesy before, however, in the interest of making sure both parties are represented, I have agreed to extend loss value and position submission to [the end of business on September 8, 2017].
>
> Please be advised-this date will NOT be extended and an award will be provided shortly thereafter with or without a loss value from [Statewide's] appraiser.

Despite this further extension and warning, Arsenault did not submit an appraisal.

On September 11, 2017, the umpire issued a loss valuation award totaling $971,947.15, based on Provencher's unopposed appraisal. Since Mercer had

7

previously paid Statewide $1,050,000, the practical effect of the award was to require Statewide to reimburse Mercer $78,052.90 for the overpayment.

Statewide moved to vacate the umpire's award and remand the matter to the umpire for consideration of an appraisal that Statewide had still not submitted. Mercer cross-moved to enforce the umpire's award and compel Statewide to reimburse Mercer for the $78,052.90 overpayment in accordance with the umpire's award. The trial court framed the issue as the enforcement of a contract:

> So, there was a contract that said that the parties were going to agree to the appraisal process, they went into the appraisal process. For whatever reason, Mr. Arsenault did not submit . . . an appraisal or any other report to the umpire. The umpire asked him repeatedly for months. [There were] almost daily emails that were going out to Mr. Arsenault saying, "When are you going to submit your paperwork here so that I could render a decision," and he postponed it three times, four times, whatever. He kept postponing his decision to allow Mr. Arsenault to submit whatever reports he was going to submit with regard to the appraisal.

The judge rejected Statewide's request to reopen the appraisal process, noting the process had already taken much longer than anticipated by the Agreement. The judge entered an order: (1) denying Statewide's motion to vacate and remand the umpire's award; (2) granting Mercer's cross-motion to enforce the umpire's award and compel reimbursement; (3) declaring the

A-3792-17T1

umpire's award "valid, enforceable, and final;" (4) ordering Statewide to pay Mercer $78,052.90; (5) entering judgment in favor of Mercer and against Statewide in the amount of $78,052.90 to be docketed if payment was not made within fifteen days; and (6) dismissing the action with prejudice as provided for in the Agreement.

Statewide moved for reconsideration. The trial court: (1) denied reconsideration; (2) denied a stay of enforcement of the judgment; and (3) denied as moot Mercer's cross-motion to require Statewide to post a bond and answer an information subpoena. In its written memorandum of decision, the trial court engaged in the following analysis:

> [Statewide] [does] not allege that the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or that it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence in enforcing the appraisal award and requiring the reimbursement to Mercer of $78,052.90. Rather, [Statewide] argues that the [c]ourt can intervene in the appraisal award because the [umpire] rejected the costs for the fire suppression system and other code upgrades. The time to make that argument was during the appraisal process.

The trial court found Mercer's appraiser submitted his report in early June 2017, but Statewide's "appraiser failed to submit an appraisal report despite

numerous attempts by the umpire and Mercer's appraiser and Mercer's counsel to secure a report from him." The trial court explained:

> The report was originally due in early June 2017. Despite several adjournments of the deadline to serve the report, Mr. Arsenault never provided a report and on September 11, 2017 the appraisal panel issued their award in accordance [with] Section E of the insurance policy and the Mediation Settlement Agreement.
>
> It is on those facts that the [c]ourt found the award of the appraisal panel dated September 11, 2017 is valid, enforceable and final because the parties agreed . . . to abide by the appraisal process set forth in the insurance policy issued to [First Assembly] by [Mercer].

The trial court concluded its prior decision was not "based upon a palpably incorrect or irrational basis" and that it had not failed to consider or appreciate the "significance of probative, competent evidence." This appeal followed.

At issue is the trial court's enforcement of the appraisal process. Statewide does not dispute it is contractually bound by the terms of the appraisal process. Rather, Statewide asserts the umpire "refused to allow charges that were mandated by a governmental unit" and "such determinations amounted to legal error" that require reversal of the award. Statewide also contends the umpire's alleged refusal to acknowledge the code upgrades required by law amounted to

a violation of public policy, thus providing a separate ground for vacation of the award. We disagree.

"The interpretation and construction of a contract is a matter of law for the trial court, subject to de novo review on appeal." Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (citing Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). "A settlement agreement between parties to a lawsuit is a contract." Ibid. (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). Thus, we review enforcement of a settlement agreement de novo. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474-75 (App. Div. 2009).

As a matter of public policy, our courts strongly favor the settlement of litigation. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). "In furtherance of this policy, our courts 'strain to give effect to the terms of a settlement wherever possible.'" Ibid. (quoting Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util., 206 N.J. Super. 523, 528 (App.Div.1985)).

The purpose of the appraisal process was to have the value of loss assessed by disinterested third-parties. The umpire's role was to resolve those items where the appraisers disagree. Here, the umpire could not have awarded Statewide the cost of any of the building code upgrades because it did not have

11

a value for the work set by Arsenault and Mercer's appraiser had not included those costs in his appraisal. We further note that Mercer disputed several significant cost items because those items did not relate to the fire damage. In particular, Mercer denied responsibility for the cost of replacing windows and doors that had not been damaged by the fire. Additionally, Mercer contended Statewide overbilled certain work.

Statewide acknowledges it was obligated to engage the services of its appraiser. Nevertheless, it argues the umpire was obligated to keep Statewide and its counsel "advised as to issues that had arisen during the course of the proceedings." The record demonstrates Statewide or its attorney were notified of Arsenault's failure to submit an appraisal and the deadline imposed by the umpire.

Statewide bore responsibility for ensuring Arsenault complied with the appraisal submission deadline because of its duty to diligently pursue its claims. See, e.g., Freeman v. State, 347 N.J. Super. 11, 31-32 (App. Div. 2002) ("Equitable tolling . . . does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims."). Statewide cannot excuse its failure to exercise reasonable diligence in pursuing its claims by blaming the umpire. Statewide was given ample opportunity to submit its appraisal. Indeed,

12

Statewide had still not produced an appraisal when oral argument took place before the trial court, more than four months after the umpire issued his award.

Courts will not "make a better or more sensible contract" for the parties "than the one they made for themselves." Kotkin v. Aronson, 175 N.J. 453, 455 (2003) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)). Statewide agreed to be bound by the appraisal process set forth in the Policy. The appraisal process provided the loss value was to be "set by agreement of any two of the three persons" comprised of the two appraisers and the umpire. Because Statewide failed to submit an appraisal, Mercer's appraisal was unopposed.

Statewide should have diligently pursued its claim by overseeing or replacing its appraiser to ensure its interests were represented. Despite adequate notice and opportunity, it did not do so. As a result of that failure, Mercer's appraisal was uncontested. Determining the value of the loss based on the uncontested appraisal was appropriate under the terms of the Agreement. Consequently, the trial court correctly denied Statewide's motion to vacate the award. It also properly declared the umpire's award valid, enforceable and final; required Statewide to pay Mercer $78,052.90; entered judgment against Statewide in that amount to be docketed if not paid within fifteen days; and dismissed the action with prejudice as provided for in the mediation agreement.

A-3792-17T1

Statewide also argues the trial court erred by denying reconsideration. We disagree. A trial court's order on a motion for reconsideration will not be set aside unless shown to be an abuse of discretion. <u>Granata v. Broderick</u>, 446 N.J. Super. 449, 468 (App. Div. 2016) (citing <u>Fusco v. Bd. of Educ.</u>, 349 N.J. Super. 455, 462 (App. Div. 2002)). Reconsideration should only be granted in those cases in which the court based its decision "upon a palpably incorrect or irrational basis," or did not "consider, or failed to appreciate the significance of probative, competent evidence." <u>Ibid.</u> (quoting <u>Fusco</u>, 349 N.J. Super. at 468). For the reasons we have stated, the trial court properly enforced the umpire's award. Therefore, the denial of reconsideration was not an abuse of discretion.

Statewide's remaining arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3792-17T1