HAMILL, J.T.C.
This is a motion by plaintiff Seacoast Realty Co. to vacate a settlement entered on the record on May 2,1994. The property is located at 121 State Highway and is designated as Block 114, Lot 1 on the tax map of West Long Branch Borough. The original assessment for 1992, the first year under appeal, totaled $2,235,-000. For 1993, the second year under appeal, the assessment totaled $2,025,700.
The matters were listed for trial on May 3,1994. On May 2 the parties telephoned the court and put a settlement on the record. As of that date the parties had not exchanged appraisal reports. The settlement reduced the assessment for both years to $1,935,000. A review of the sound recording of the settlement on the record indicates that the settlement was subject to governing body approval and that the governing body would be meeting on May '4. There was no mention at any point during the recorded settlement that the settlement was subject to the taxpayer’s approval. The court indicated that it would “hold up issuing a judgment” until it was notified that governing body approval had been received. That notification was received shortly before 9 a.m. on May 5. During the afternoon of May 5 plaintiffs counsel telephoned the court and advised that his client had rejected the settlement. On May 6 plaintiff’s counsel faxed a letter to the court repeating the substance of his phone call. Counsel was advised to file a motion if he wished the court to consider an application to vacate the settlement. On May 10, plaintiff filed this motion to vacate. Judgments were entered on June 6 in accordance with the original settlement. On June 10, I denied plaintiffs motion, stating that a written opinion would follow.
Paragraph 3 in the supporting certification of plaintiff’s counsel provides the following statement of facts:
On or about May 2, 1994, West Long Branch offered to settle this case. I indicated to West Long Branch that I believed the settlement would be approved by our client. Both my adversary and I advised the Court of the proposed *186 settlement. The Court immediately placed a settlement on the record. Among the terms of the settlement placed on the record were that the Municipality had a few days in which to advise the Court of the approval of the governing body. Before the Court was advised of the governing bodies [sic] having approved this settlement, I advised my client of the settlement. My client disapproved this settlement and directed that I ask that the case be restored to the Court’s calendar. I advised the Court by facsimile of my client’s disapproval of settlement on May 5,1994 ... I received a phone call on May 6, 1994 from Judge Hamill’s staff indicating that the Court was going to enter the judgment notwithstanding my written request of the day before. In that conversation, Judge Hamill’s secretary said that a formal Motion would be required.
The quoted paragraph from counsel’s certification is the sole factual support for plaintiffs motion to vacate the settlement.
The responding certification of counsel for West Long Branch Borough states that he telephoned and wrote plaintiffs counsel on February 1,1994 offering to settle the case. He had no response until the afternoon of May 2, when plaintiffs counsel called and inquired whether the offer was still open. Upon agreeing on the terms of a settlement, counsel immediately telephoned the court and put the settlement on the record. The borough’s certification: (1) states that at no point did plaintiffs counsel indicate that the settlement was contingent on his Ghent’s approval, (2) confirms that the court was notified of governing body approval before 9 a.m. on May 5, and (3) states that plaintiffs counsel telephoned during the afternoon of May 5, stating that his client was giving him trouble regarding the settlement and that he might have to file a motion to vacate. The borough’s counsel takes exception to the statement of plaintiffs counsel in his certification that on May 2, “I indicated to West Long Branch that I believed the settlement would be approved by our client.” The borough maintains that plaintiffs counsel made no such statement.
The factual recitation in plaintiffs letter brief is inconsistent with the facts as stated in the certification of plaintiffs counsel. Plaintiff states in its letter brief that counsel spoke about the case, “attempted to settle the case and reached a tentative settlement. The settlement was subject to client approval, that is to say the approval of my client and the governing body.” During argument on the motion, plaintiffs counsel stated that he thought he had authority to settle based on prior dealings with the client.
*187 I conclude that the settlement was not made contingent on approval by the plaintiff. The certification of plaintiffs counsel includes no such statements, and I am more inclined to believe the facts as certified than the facts as summarized in plaintiff’s brief. Moreover, during the settlement on the record, plaintiffs counsel said absolutely nothing about needing client approval or the settlement’s being contingent on client approval. If he had, I would not have permitted the settlement to be placed on the record. Counsel said nothing during argument on his motion which would alter the statements in his certification. Whether plaintiffs counsel stated in his conversation of May 2, with defendant’s counsel that he “believed the settlement would be approved by our client” is immaterial. On the assumption the statement was made, it was plainly not a statement that the settlement was contingent on client approval.
The only contingency to the settlement was governing body approval. Taking a settlement contingent on governing body approval is an accepted practice in the Tax Court because “municipalities can ordinarily act only by adoption of an ordinance or resolution at a public meeting,” Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J.Super. 315, 327, 509 A.2d 808 (App.Div. 1986), and governing bodies meet only periodically.
Plaintiff is correct in asserting that a settlement agreement between parties to a lawsuit is a contract. Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). As they embody the important public policy of settling litigation, such contracts are vacated only upon a showing by clear and convincing proof of compelling circumstances. Ibid. See also Department of Public Advocate v. New Jersey Bd. of Public Utilities, 206 N.J.Super. 523, 528, 503 A.2d 331 (App.Div.1985). The policy of upholding settlements is all the stronger here where the parties have settled on the record thus bringing into play “the interest of efficient dispute resolution];,] ... management of court calendars and integrity of the litigation process.” Hallock v. State, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178, 1180 (1984). Here there has been no showing, much less convincing proof, of compelling circumstances.
*188 The initial argument of plaintiffs counsel was that the settlement was contingent on his client’s approval. As made clear by counsel’s certification and the recorded settlement, the facts are to the contrary. Nor is plaintiff correct that the situation is analogous to the revocation of an offer prior to acceptance. As previously stated, the only contingency to the formation of a binding contract was approval by the governing body. See Jersey City v. Roosevelt Stadium, Marina, Inc., supra, 210 N.J.Super. at 327, 509 A.2d 808 (“unauthorized consent of a municipal attorney cannot bind the governing body”); Stonehurst at Freehold v. Freehold Tp., 139 N.J.Super. 311, 353 A.2d 560 (Law Div.1976) (consent judgment between plaintiff and township would be vacated where attorney’s authority to consent to the judgment was defectively given in executive session of township committee). Governing body approval was obtained on May 4 and was communicated to the court before 9 a.m. on May 5. Plaintiffs attempted revocation during the afternoon of May 5 was too late because a binding contract to settle the litigation was formed on May 4 when the governing body approved the settlement.
On the day before the return date on plaintiffs motion, plaintiff faxed a reply.[1] The reply contains the following new argument:
In the case at hand, it was thought that the plaintiffs attorney had the authority to compromise and settle his client’s claim. It is established that an attorney has no authority to compromise or settle his client’s claim without his client’s approval, even though the attorney may believe that the settlement was fair and equitable. It has been recognized generally that a client is bound by the appearance, admissions, and actions of counsel acting on behalf of his client. However, an attorney has no authority to compromise or settle his client’s claim without his client’s approval. The client/attomey relationship is one of principal and agent. The authority given an attorney to negotiate with an opposing party in a law suit does not, by itself, imply power to reach a binding agreement; the client’s express authorization is necessary.
This is not an entirely accurate statement of New Jersey law. In New Jersey, an attorney for a private party may settle a *189 lawsuit based on actual or apparent authority to do so.[2] Actual authority may be either express or implied. Newark Branch, NAACP v. West Orange Tp., 786 F.Supp. 408, 423 (D.N.J.1992); United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 73-74, 194 A.2d 730 (1963). On the assumption that plaintiff did not expressly authorize its attorney to settle, there remains the question of whether plaintiffs counsel had apparent or implied authority to settle.
Mere employment of an attorney does not establish that the attorney has apparent authority to settle a claim. Smith v. Delaware Valley Auto Spring Co., 642 F.Supp. 1112 (E.D.Pa. 1986); Clarkson v. Selected Risks Ins. Co., 170 N.J.Super. 373, 379, 406 A.2d 494 (Law Div.1979). In New Jersey, as in New York, apparent authority must be created by words or conduct of the principal. As stated in Hallock v. State, supra:
Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority.
[ 485 N.Y.S.2d 513, 474 N.E.2d at 1181. ]
Moreover, the third party’s reliance must be reasonable. Ibid.
Courts differ as to whether the principal’s communication of apparent authority can be inferred from his conduct in permitting an attorney to represent him in the litigation or whether a positive manifestation by words or conduct of the principal is required. Thus, for instance, in Hallock v. State, the court held that a party, who was not present in court, was bound by his attorney’s settlement of an eminent domain case. The attorney appeared at a pretrial conference held the morning of the day of trial and entered into a stipulation of settlement that was dictated on the record. A court rule required that attorneys attending pretrial *190 conferences have authority to settle. Two months later the party attempted to vacate the settlement. Reversing the Appellate Division, the New York Court of Appeals concluded that the attorney had apparent authority to settle the lawsuit. The court reasoned that the attorney had represented the party throughout the litigation, had entered into prior settlement negotiations, and appeared at the final pretrial conference on the party’s behalf. Under the court rule, the attorney’s appearance at the pretrial conference constituted an implied representation by the party that his attorney had authority to settle. Id. at 514, 474 N.E.2d at 1182. On the other hand, in Fennell v. TLB Kent Co., 865 F.2d 498, 502-03 (2d Cir.1989), a federal court of appeals, applying New York law, held that apparent authority was not present where the principal did not positively manifest to the opposing party that his attorney had authority to settle. The court distinguished Hallock on the basis of the court rule. Some jurisdictions have adopted a more lenient rule of apparent authority based on an attorney’s participation in all aspects of a lawsuit. Thus, for instance, apparent authorization by the principal has been found where an attorney participates in all phases of a lawsuit on behalf of the principal and the principal does not rebut the resulting presumption that the attorney has authority to settle. Terrain Enterprises, Inc. v. Western Cas. and Sur. Co., 774 F.2d 1320 (5th Cir.1985) (applying Mississippi law, developer was bound by its attorney’s settlement where developer hired attorney who handled all aspects of the litigation and developer failed to offer proof that attorney lacked authority to act on its behalf), cert. denied, 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986); Capital Dredge & Dock Corp. v. Detroit, 800 F.2d 525, 530-31 (6th Cir.1986) (applying Michigan law, party was bound to its attorney’s release of claims where attorney was held out as having authority to represent the party).
In New Jersey it has been held that sending an attorney to a settlement conference presumptively establishes that the attorney has authority to settle, and apparent authority may even be found where the principal denies having granted authority to settle, but nevertheless places the attorney in a position where “ ‘a person of *191 ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question.’ ” United States Plywood Corp., supra, 41 N.J. at 74, 194 A.2d 730 (quoting J. Wiss & Sons Co. v. H.G. Vogel Co., 86 N.J.L. 618, 621 (E. & A 1914)).
Here, by negotiating a settlement and placing that settlement on the record, plaintiffs counsel raised a presumption that he had apparent authority to settle the case. Counsel had represented plaintiff throughout the litigation, had engaged in prior settlement negotiations with defendant’s counsel, had telephoned defendant’s counsel the day before trial to inquire whether defendant’s settlement offer was still open, and then unconditionally accepted the offer. Defendant’s counsel had no reason to believe that plaintiffs counsel lacked authority to settle. Hundreds of local property tax cases are routinely settled through telephone discussions among counsel followed by a settlement on the record by telephone. Thus plaintiff had placed its counsel in a position where a person familiar with the litigation of a local property tax matter could reasonably presume that counsel had authority to settle. J. Wiss & Sons Co. v. H.G. Vogel Co., supra, 86 N.J.L. at 621. Plaintiff might have rebutted the presumption of apparent authority by establishing that counsel in fact was not authorized to settle, New Jersey Highway Auth. v. Renner, 32 N.J.Super. 197, 200, 108 A.2d 107 (App.Div.1954), aff'd, 18 N.J. 485, 114 A.2d 555 (1955), but failed to do so.[3]
Plaintiffs counsel appears to have had implied authority as well. “Under implied authority an agent is authorized to do what he may reasonably infer the principal desires him to do in light of the principal’s manifestations and facts as he knows or should know them when he acts.” Lampley v. Davis Mach. Corp., 219 N.J.Super. 540, 548-49, 530 A.2d 1254 (App.Div.1987). See also *192 Edwards v. Born, Inc., 792 F.2d 387, 391 (3d Cir.1986) (applying Virgin Islands law); Newark Branch, NAACP v. West Orange Tp., supra, 786 F.Supp. at 424. The firm with which plaintiffs counsel is associated handles a large number of local property tax appeals and is quite familiar with the practice. During argument on the motion, plaintiffs counsel stated that in their prior dealings, the client had accepted the firm’s advice and direction and that consequently counsel believed he had authority to settle. The fact that counsel arguably believed the actual settlement amount would be approved by his client tends to suggest an attorney-client relationship in which the client has generally accepted the attorney’s direction. See Edwards v. Born, Inc., supra, 792 F.2d at 391.
It is worth mentioning the alternative to enforcing the settlement. As I indicated previously, the trial in this matter was scheduled for May 3, 1994, and the settlement was placed on the record on May 2. Under R. 8:6-l(b)(l), in a Tax Court proceeding involving valuation of real property, a party intending to rely on expert valuation testimony is required to furnish the opposing party with a copy of the expert’s appraisal report at least 10 days before trial. According to defendant’s counsel, and as confirmed by the absence of an appraisal report in the court’s file, plaintiff failed to comply with the deadline for exchanging appraisal reports. Plaintiff bears the burden of proof in a local property tax matter and must overcome the presumption of correctness in the assessment. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13, 495 A.2d 1308 (1985). Faced with that presumption, lacking an appraisal report, and bearing the burden of proof, plaintiff was plainly unprepared to proceed on May 3. If, instead of enforcing the settlement agreement, I were to return the case to the trial calendar, I would maintain the parties in their respective positions as of May 3. This would mean that on the rescheduled trial date, plaintiff would have to proceed without an appraisal report. See 525 Realty Holding Co. v. Hasbrouck Heights, 3 N.J.Tax 206, 210 (Tax 1981). In those circumstances, the borough would likely move to dismiss for failure to overcome the presumption of correctness. In all likelihood, I would grant the motion. Plain-
*193 tiffs case would be dismissed and the original assessments for both years would be sustained. The settlement amounts may not be what plaintiff would have liked, but they presumably are better than no reduction in the assessments.
Plaintiffs inability to proceed on the scheduled trial date raises an alternative argument for holding plaintiff to the settlement. Faced with trial the following day and the possibility that his client’s case would be dismissed, plaintiffs counsel arguably settled in an emergency situation to salvage something of his client’s claim. Since counsel acted in his client’s best interests, plaintiff should not be heard to deny his attorney’s authority to settle the lawsuit. Sockolof v. Eden Point N. Condominium Ass’n, Inc., 421 So.2d 716 (Fla.Dist.Ct.App.1982); Cross-Aero Corp. v. Cross-Aero Sera. Corp., 326 So.2d 249 (Fla.Dist.Ct.App. 1976).
I have analyzed plaintiffs motion as one to vacate a settlement even though judgments have been entered, and a motion to vacate a judgment must be addressed under R. 4:50-1. Aponte v. Williard, 229 N.J.Super. 490, 494, 551 A2d 1054 (App.Div.1989). I have done so because plaintiff advised the court of its desire to revoke the settlement three days after the settlement was put on the record and one month before judgment was actually entered. Analyzed under R. 4:50-1, the result would be no different. A motion to vacate a judgment “is addressed to the sound discretion of the trial court, guided by equitable principles.” Hodgson v. Applegate, 31 N.J. 29, 37, 155 A2d 97 (1959). Moreover, “Rule 4:50-1 provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances.” Baumann v. Marinaro, 95 N.J. 380, 393,-471 A2d 395 (1984). For the same reasons that plaintiff has failed to establish “compelling circumstances” that would justify vacating the settlement, it has failed to establish “exceptional circumstances” that would justify vacating the judgment for any of the reasons categorized under R. 4:50-1. Plaintiff has suffered no unusual prejudice; the alternative to settlement was potentially dismissal of the complaints. There *194 appear to be no other equitable concerns that would justify relief from the judgment.
For the foregoing reasons, plaintiffs motion to vacate the settlement is denied.

 Counsel are reminded that under R. 1:6-3 reply papers are to be filed “not later than 4 days before the return date____“ Failure to abide by the Rule may lead to the imposition of sanctions. See Tyler v. New Jersey Auto. Full Ins. Underwriting Ass'n 228 N.J.Super. 463, 468, 550 A.2d 168 (App.Div.1988).

 A municipal corporation is bound only by the acts of an agent that are expressly or implicitly authorized. Apparent authority does not suffice. Giardini v. Town of Dover, 101 N.J.L. 444, 446, 128 A. 798 (Sup.Ct.1925) (town not liable for unauthorized work performed by contractor under supervision of town engineer). See also Jersey City v. Roosevelt Stadium Marina, Inc., supra, 210 N.J.Super. at 327, 509 A.2d 808.

 In such an event, there could be a violation of R.P.C. 1.2, which provides: "A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.''