KAHN, J.T.C.
This is the court’s opinion with respect to the motion of defendant, Township of Morris (“municipality”), to vacate a settlement entered into on May 17, 2000. The underlying suit commenced when AT & T (“taxpayer”) filed tax appeals for the years 1997 through 2000, seeking reductions in the assessments for properties located at 412 and 340 Mount Kemble Avenue (“subject property”). At the time taxpayer filed the complaint, it leased the subject property from Morris Ten pursuant to a leasehold agreement that gave taxpayer the right to prosecute such tax appeals.
The 1997 and 1998 tax appeals were consolidated on May 17, 1999, with trial ensuing approximately one year later, on May 3, 2000. After several days of court appearances, the parties reached a settlement agreement for all four years on May 9, 2000.[1] This settlement was subject only to the municipality’s approval. The municipality eventually granted its approval, which was memorialized via a resolution (the “resolution”) during a committee meeting of the Township of Morris on May 17, 2000 (the “committee”).[2]
Taxpayer soon after signed a contract with Morris Ten on May 80, 2000 to purchase the subject property for $87,700,000. The anticipated closing date for the taxpayer’s purchase was June 9, 2000. Sometime after the municipality memorialized the resolution of the settlement agreement, counsel for the municipality learned of taxpayer’s purchase of the subject property. The committee learned of the sale and, in turn, rescinded the resolution on June 2, 2000, and refused to sign the settlement stipulation prepared by taxpayer’s counsel.
The municipality filed the present motion to vacate the May 17, 2000 settlement agreement. In its moving papers the municipality argued that taxpayer’s failure to inform the municipality of the *322 sale violated both R. 4:17-7 and the continuing duty of attorneys to amend interrogatories articulated by New Jersey case law. In an effort to enforce the settlement, taxpayer argues that New Jersey casji law requires that this settlement agreement be enforced as a'binding contract.
The sole issue before this court is whether the May 17, 2000 settlement agreement should be vacated in light of the subsequent sale of the subject property. This court recognizes New Jersey’s strong public policy towards settling litigation and enforcing settlements. See Jannarone v. W.T. Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961). This policy is even more persuasive where the parties have settled on the record, thus invoking the interest of efficient dispute resolution, management of the court’s calendar, and the integrity of the litigation process. See Seacoast Realty Co. v. West Long Branch Bor., 14 N.J. Tax 197 (Tax 1994). Settlements before the Tax Court are typically considered binding contracts, once approval is obtained from the governing body. Id. at 201. In fact, after such approval is obtained, the court will only vacate a settlement upon a showing of clear and convincing proof of “ ‘fraud or other compelling circumstances.’ ” See Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). Pascarella v. Brack, 190 N.J.Super. 118, 124-25, 462 A.2d 186(App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983) (citation omitted); see also Seacoast Realty, supra, (declining taxpayer’s request to vacate a settlement agreement one day after municipal approving body passed resolution adopting said settlement). Other compelling circumstances include mutual mistake, undue haste, pressure or unseemly conduct in settlement negotiations.. See Honeywell v. Bubb, 130 N.J.Super. 130, 136, 325 A.2d 832 (App.Div.1974) (citing DeCaro v. DeCaro, 13 N.J. 36, 41-42, 97 A.2d 658 (1953)).
The settlement agreement in this case is typical of those presented to the Tax Court, in that it was contingent on governing body approval. Here, the committee’s May 17, 2000 resolution created a binding contract between taxpayer and municipality. Thus, like Seacoast, supra, the municipality’s subsequent attempt *323 to void the contract via a motion to vacate the settlement, will only be granted upon a clear and convincing showing of fraud or other compelling circumstances.
In the present case, the municipality failed to offer such clear and. convincing evidence. In fact, at oral argument, counsel for the municipality conceded that there was no fraud on behalf of taxpayer or taxpayer’s counsel. Rather, the sole argument in support of the municipality’s motion to vacate is that: (1) someone within AT & T knew that AT & T r was in the process of, contemplating, or otherwise pursuing the purchase of the subject property while settlement negotiations were being conducted; (2) taxpayer had a duty to come forward with this knowledge; and (3) had taxpayer done so, the municipality would not have entered into the current settlement but instead would have attempted to offer the sale into evidence at trial. The municipality, however, is unable to furnish any evidence of fraud or other compelling circumstances to justify vacating the settlement agreement. In light of this failure, this court denies the municipality’s motion to vacate the May 17, 2000 settlement agreement.
 A party seeking to vacate a settlement based on fraud must prove the following: 1) a material misrepresentation; 2) made with knowledge of the falsity and with the intent that the representation be relied on; and 3) actual reliance on the misrepresentation to that party’s detriment. See Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981). The critical inquiry in determining the materiality of omitted information is whether the omission affected the general scope of discovery. See Nolan, supra, 120 N.J. at 474, 577 A.2d 143. A further inquiry concentrates “on whether the omitted information, if true, would have a significant effect on the merits of both plaintiffs cause of action and defendant’s defenses.” Ibid.
 The underlying claim in the present case is a property tax appeal. The goal of the taxpayer in a property tax appeal is to show that the municipality’s assessment was incorrect, thus entitling the taxpayer to a reduction in the assessment. The municipality’s goal is the exact opposite. Each party attempts to prove *324 its case through expert witnesses who testify as to the value of the property. While the selling price of real property involved in a judicial determination of its assessed value is usually a guiding indication of its true value and will be accepted into evidence, some sales are not accepted, because they are more clearly influenced by business decisions than by real estate decisions. See Harrison Realty Corp. v. Town of Harrison, 16 N.J.Tax 375, 381-82 (Tax 1997), aff'd, 17 N.J.Tax. 174 (App.Div.1997), certif. denied, 153 N.J. 213, 708 A.2d 64 (1998). Moreover, sales of property will not indicate or corroborate property tax valuations where the seller had unusual motivation, the mechanics of the sale were not in keeping with market practice and the timing of the sale was well after the valuation date in question. See American Cyanamid Co. v. Wayne Tp., 17 N.J.Tax 542, 578-80 (Tax 1998), aff'd. per curiam o.b. 19 N.J. Tax 46 (App.Div.2000).
In the present case, the sale of the subject property was clearly motivated by business, rather than real estate considerations. In its papers, taxpayer certifies that the aforementioned purchase was structured as a simultaneous § 1031 tax free exchange and synthetic lease. Pursuant to section 1031 of the Internal Revenue Code, a seller of certain real estate can defer capital gams tax using the proceeds of one sale to purchase a similar property. I.R.C. § 1031(a)(1). In order to take advantage of this section, however, the seller must complete the exchange within 180 days of the original closing date. See I.R.C. § 1031(a)(3). In the present case, taxpayer purchased the subject property primarily to defer capital gains tax from a previous sale. Thus, the business aspect of deferring capital gains tax took precedent over any real estate aspects. Moreover, this sale did not comport with normal market practice, because it was between a lessor and a lessee. Furthermore, the sale occurred approximately two and one half years after the first valuation date for the underlying tax appeals and some time after the municipality approved the settlement.
For the foregoing reasons, the sale of the subject property would not have affected the merits of the case because it could not have been used to corroborate value at trial. Thus, even if taxpayer should have notified the municipality of the potential *325 sale, taxpayer’s failure to do so is not sufficient cause to vacate the May 17, 2000 settlement agreement in dispute.
The municipality’s motion to vacate the May 17, 2000 settlement is denied.

 After reaching said settlement the matter was formally removed from the trial calendar.

 The original assessed value for 412 Mount Kemble Avenue was $58,634,000. The purported settlement agreement reduced the assessment to $51,634,900.