NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**MARY SIOBHAN BRENNAN**
JUDGE

Essex County Dr. Martin Luther King, Jr. Justice
Building 495 Martin Luther King Blvd. - Fourth Floor
Newark, New Jersey 07102-0690
(609) 815-2922 Ext. 54600
Fax: (973) 424-2424

March 4, 2022

Peter L. Davidson., Esq.
THE DAVIDSON LAW GROUP LLC
154 South Livingston Avenue, Suite 207
Livingston, N.J. 07039

Kenneth A. Porro, Esq.
Chasan Lamparello Mallon & Cappuzzo
300 Lighting Way
Suite 200
Secaucus, New Jersey 07094

> Re: **1000 Harbor Blvd., LLC By TT UBS Financial Services, Inc v. Township of Weehawken**
> Docket Nos.: 007840-2018, 002115-2019 & 002389-2020

Dear Counsellors,

This letter opinion sets forth the court's findings of fact and conclusions of law on Defendant's R. 4:50 motion for relief from Tax Court Judgments entered on January 21, 2021, and Plaintiff's cross-motion for enforcement of the Tax Court Judgments and to collect pre-judgment interest, in the above referenced matters. R. 1:7-4. For the reasons explained below, the court denies Defendant's motion and grants Plaintiff's motion in part. Additionally, the court finds that it does not have jurisdiction over disputes involving a separately executed agreement between the parties relating to tax years 2021, 2022, and 2023.

### I. Findings of Fact and Procedural History

Defendant's, Township of Weehawken's ("Municipality"), motion requests that this court vacate judgments entered on January 21, 2021 regarding tax appeals filed for years 2018 through






2020. It also requests that this court invalidate a separate side agreement involving multiple provisions including negotiated assessment reductions for tax years 2021, 2022, and 2023.

The tenant, UBS Business Solutions US LLC, is an affiliate of UBS Financial Services Inc. ("Taxpayer"). The underlying suits at issue were commenced in 2018 when the Taxpayer, as an aggrieved party, began filing tax appeals seeking reductions in the assessments for property it rented on Harbor Boulevard and identified on the Municipality's tax map as Block 34.03, Lot 4.03 ("subject property"). The subject property consists of 616,967 square feet of office and retail space, situated on 3.6 acres of land.[1] The subject property is owned and leased from 1000 Harbor Boulevard, LLC, an affiliate of Hartz Mountain Industries, Inc. ("Hartz"), in an area Hartz developed on the Hudson River to the east of the Lincoln Tunnel's helix.

In January 2021, the parties reported to the court that the matters were amicably settled. The Municipality's attorney drafted a Stipulation of Settlement, which was then executed by counsel for both parties on January 14 and 20, 2021. The fully executed Stipulation of Settlement was uploaded into the eCourts system on January 20, 2021, and Judgments were entered on January 21, 2021.

The fully executed Stipulation of Settlement provided for the following resolutions:

---

[1] The property adjacent to the subject property is also owned by a Hartz affiliate. That property consists of 371,104 square feet of office and retail space situated on 1.94 acres of land. Judgments and a settlement agreement for tax appeals filed on that property are also the subject of a similar motion. 1200 Harbor Boulevard L.L.C. v. Township of Weehawken, Docket Numbers 003701-2016, 004768-2017, 003266-2018, 002099-2019 & 003317-2020.

| Tax Year | Land | Improvements | Original Assessment Value | Settlement Assessed Value |
|---|---|---|---|---|
| 2018 | $51,758,100 | $158,241,900 | $210,000,000 | $210,000,000 |
| 2019 | $51,758,100 | $163,241,900 | $215,000,000 | $142,113,700 |
| 2020 | $51,758,100 | $163,241,900 | $215,000,000 | $145,478,300 |

Paragraphs Two and Three of the Stipulation of Settlement contain the following provisions:

> 2. The undersigned have made such examination of the value and proper assessment of the property and have obtained such appraisals, analyses and information with respect to the valuation and assessment of the property as they deem necessary and appropriate for the purpose of enabling them to enter into the Stipulation. The assessor of the taxing district has been consulted by the attorney for the taxing district with respect to this settlement and has concurred.
>
> 3. Based upon the foregoing, the undersigned represent to the court that the above settlement will result in an assessment at the fair assessable value of the property consistent with assessing practices generally applicable in the taxing district as required by law.

Paragraphs Four and Six of the Stipulation of Settlement refer to a separate agreement between the parties, dated January 14, 2021, entitled Tax Settlement Agreement TT UBS-1000 Harbor Blvd. ("Tax Settlement Agreement").

Paragraph Five indicates that the provisions of N.J.S.A. 54:51A-8 ("The Freeze Act") shall not apply to the settlement.

3

On November 29, 2021, 1000 Harbor Boulevard, LLC sold the subject property for $219,000,000.

On January 20, 2022, the Municipality filed the present motion to vacate the January 21, 2021 Judgments. The Municipality alleges that, based upon reasonable information, expectation, and belief: 1) Taxpayer must have known that the landlord was contemplating or under contract to sell the subject property prior to the January 14, 2021 signing of the Stipulation of Settlement; 2) the pending sale was material information; and 3) the pending sale was not disclosed in answers to interrogatories.

The Municipality argues that pursuant to R. 4:50, Relief from Judgment or Order, "the court may relieve a party . . . from a final judgment or order for the following reasons: (b) newly discovered evidence which probably would alter the judgments . . . ; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ; [or] (f) any other reason justifying relief."

In its moving papers, the Municipality argued that Taxpayer's failure to inform the Municipality of the sale violated both R. 4:17-7 and the continuing duty of attorneys to amend interrogatories as articulated by New Jersey case law. Alternatively, Taxpayer argues that New Jersey case law requires that the settlement agreement be enforced as a binding contract.

On February 22, 2022, Taxpayer filed a reply brief and cross-motion, requesting that the court enforce the settlement, grant pre-judgment interest, and afford Taxpayer motion costs and fees. Taxpayer asserts that it had no knowledge of the November 2021 sale prior to signing the

4

January 20, 2021 Stipulation of Settlement and that the sale does not constitute a valid reason to vacate the Judgements entered by the Tax Court. Taxpayer also argues that based on the Tax Settlement Agreement, pre-judgement interest of five percent is due because the Municipality failed to provide the refund payment within the required 120 days.

The court held oral argument on March 2, 2022 via Zoom.

## II. Legal Analysis

The issues presented to this court are: 1) whether the January 21, 2021 Court Issued Judgments should be vacated; 2) whether the Tax Settlement Agreement should be held void and non-enforceable; and 3) whether the Taxpayer is entitled to pre-judgment interest from the Municipality.

This court recognizes New Jersey's strong public policy towards settling litigation and enforcing settlements. See AT&T Corp. v. Township of Morris, 19 N.J. Tax 319, 322 (2000) (citing Jannarone v. W.T. Co., 65 N.J. Super. 472, 476, (App. Div. 1961), certif. denied, 35 N.J. 61, (1961)). This policy is even more persuasive where the parties have fully settled with governing body approval, thus invoking the interest of efficient dispute resolution, management of the court's calendar, and the integrity of the litigation process. See Seacoast Realty Co. v. West Long Branch Bor., 14 N.J. Tax 197 (1994). Settlements before the Tax Court typically constitute binding contracts once approval is obtained from the governing body. See id. at 201.

After governing body approval is obtained, the court will only vacate a settlement upon a showing of clear and convincing proof of "fraud or other compelling circumstances." See AT&T

5

Corp., 19 N.J. Tax at 322; Nolan v. Lee Ho, 120 N.J. 465, 472, (1990); Pascarella v. Bruck, 190 N.J. Super. 118, 124-25, (App. Div. 1983), certif. denied, 94 N.J. 600, (1983) (citation omitted); Seacoast Realty, 14 N.J. Tax at 197 (declining taxpayer's request to vacate a settlement agreement one day after the municipal approving body passed a resolution adopting said settlement). Other compelling circumstances include mutual mistake, undue haste, pressure, or unseemly conduct in settlement negotiations. See Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974) (citing De Caro v. De Caro, 13 N.J. 36, 41-42 (1953)).

*The Court Issued Judgments*

The Stipulation of Settlement filed in these cases is not atypical of those presented to the Tax Court. Once executed, the terms of the Stipulation of Settlement became binding on both parties. Thus, the Municipality's motion practice attempting to vacate the Judgments by voiding negotiated reductions will only be granted upon a clear and convincing showing of fraud or other compelling circumstances.

A party seeking to vacate a settlement based on fraud must prove the following: 1) a material misrepresentation; 2) made with knowledge of the falsity and with the intent that the representation be relied on; and 3) actual reliance on the misrepresentation to that party's detriment. See AT&T Corp., 19 N.J. Tax at 323 (citing Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981)).

The critical inquiry in determining the materiality of omitted information is whether the omission affected the general scope of discovery. See Nolan, 120 N.J. at 474. A further inquiry

6

concentrates "on whether the omitted information, if true, would have a significant effect on the merits of both plaintiff's cause of action and defendant's defenses." Ibid.

As Judge Kahn wrote in the AT&T case:

> The underlying claim in the present case is a property tax appeal. The goal of the taxpayer in a property tax appeal is to show that the municipality's assessment was incorrect, thus entitling the taxpayer to a reduction in the assessment. The municipality's goal is the exact opposite. Each party attempts to prove its case through expert witnesses who testify as to the value of the property. While the selling price of real property involved in a judicial determination of its assessed value is usually a guiding indication of its true value and will be accepted into evidence, some sales are not accepted, because they are more clearly influenced by business decisions than by real estate decisions. See Harrison Realty Corp. v. Town of Harrison, 16 N.J. Tax 375, 381-82 (Tax 1997), aff'd, 17 N.J. Tax 174 (App. Div. 1997), certif. denied, 153 N.J. 213 (1998). Moreover, sales of property will not indicate or corroborate property tax valuations where the seller had unusual motivation, the mechanics of the sale were not in keeping with market practice and the timing of the sale was well after the valuation date in question. See American Cyanamid Co. v. Wayne Tp., 17 N.J. Tax 542, 578-80 (Tax 1998), aff'd. per curiam o.b. 19 N.J. Tax 46 (App. Div. 2000).

[AT&T Corp., 19 N.J. Tax at 324.]

The court is guided by the statutory mandate that each year's local property tax assessment is a discreet event, and as such, each year must be separately appealed. N.J.S.A. 54:4-23; N.J.S.A. 54:3-21. The valuation date for each appeal is the October 1st of the preceding year. Therefore, the court is at a loss as to how a November 29, 2021 sale would have any relevance to the market value of the subject property as of October 1, 2017, 2018, or 2019.

The Municipality fails to offer any evidence, much less clear and convincing evidence, that the Taxpayer withheld any relevant information relating to those valuation dates. By law, the Municipality has the right to seek information on investment properties by virtue of N.J.S.A. 54:4-34 ("Chapter 91") and the court can assume that the assessor and the revaluation appraiser were given access to that information and applied it accordingly.

The argument in support of the Municipality's motion to vacate is that: 1) Hartz, the landlord, and Taxpayer, knew that Hartz was in the process of contemplating, or otherwise pursuing the sale of the subject property at a price in the range of its eventual sale, while tax appeal settlement negotiations were being conducted on the subject property; 2) Taxpayer had a duty to come forward with this knowledge; and 3) had Taxpayer done so, the Municipality would not have entered into the current settlement, but instead would have continued to negotiate or would have proceeded to trial.

The Municipality cites no law in support of their argument, and the court knows of none. Consequently, the court finds no relevant evidence to establish fraud or other compelling circumstances that would justify vacating the Judgments. The sale occurred approximately three and one-half years after the first valuation date for the underlying tax appeals and almost a year after the Municipality approved the settlement. The sale of the subject property on November 29, 2021 is simply not relevant to the assessment values for tax years 2018, 2019, and 2020.

*The Tax Settlement Agreement's Enforceability*

As for the Tax Settlement Agreement, it was negotiated separately; it was not reviewed or approved by the Tax Court, and it involves negotiated assessments for 2021 (in which there are no tax appeals filed), 2022 (in which a tax appeal was just recently filed), and 2023 (which is not ripe for appeal). This court therefore retains jurisdiction over disputes involving the Tax Settlement Agreement that are related to the tax years 2018 through 2020.

Disputes involving the enforcement, breach, and voidability of negotiated settlements contained in the Tax Settlement Agreement, regarding tax years 2021, 2022, and 2023 are not within the purview of the Tax Court's statutory jurisdiction. Those are matters for the Superior Court of New Jersey.

*Pre-Judgment Interest Payable to the Plaintiff*

The refund of excess taxes and associated interest are governed by N.J.S.A. 54:3-27.2. The statute provides:

> In the event that a taxpayer is successful in an appeal from an assessment on real property, the respective taxing district shall refund any excess taxes paid, together with interest thereon from the date of payment at a rate of five percent per annum . . . compounded annually at the end of each year, from the date the tax originally was due or paid, whichever is later.

> [N.J.S.A. 54:3-27.2.]

In this case, the Stipulation of Settlement Paragraph Four discusses refund interest. The pertinent section declares that no interest shall be payable to the Taxpayer on refunds of overpaid taxes resulting from a judgment . . . except as may be provided under the terms of a separate

9

agreement between the parties (Tax Settlement Agreement). As discussed above, this court does not maintain jurisdiction over the Tax Settlement Agreement sections that reference tax years in which no appeal was filed. The court does hold jurisdiction over the Tax Settlement Agreement when it relates to tax years 2018, 2019, and 2020. See R. 8:2(a).

Paragraph Three of the Tax Settlement Agreement states that the Township shall use its best reasonable efforts to refund the 2019 and 2020 overpayments of not less than two million five hundred thousand dollars ($2,500,000) within 60 days of the date of the signed Stipulations; and provided further that if the Township shall not have made such refund within 120 days of that date, interest shall begin to accrue thereafter at the rate set by the statute. Since the court entered the Judgments on January 21, 2021, the Municipality would be required to refund the Taxpayer by May 21, 2021. Taxpayer supplied the Court with a copy of the Municipality's refund check, which is dated July 9, 2021—this falls outside of the required 120 days. Therefore, according to the Tax Settlement Agreement, the Municipality owes the Taxpayer refund interest in accordance with the statutory five percent rate.

### III. Conclusion

For the reasons expressed above, the court finds that the November 29, 2021 sale of the subject property could not have been used to corroborate value at trial for the 2018, 2019, and 2020 tax appeals. Assuming for purposes of this motion that Hartz, 1000 Harbor Boulevard, LLC, and the Taxpayer were aware of the pending sale in January 2021, the sale itself would not have been of evidentiary value at trial, and therefore it cannot be a legitimate basis for vacating the

10

Judgments.

As to negotiated assessments for tax years 2021, 2022 and 2023, this court has no jurisdiction over the Tax Settlement Agreement involving those negotiated settlements. The court does not have the authority to decide the validity, legality, or voidability of the "Tax Settlement Agreement." The court does maintain authority over the Tax Settlement Agreement provisions that relate to the 2018, 2019, and 2020 tax years. Therefore, the Municipality owes refund interest in accordance with Paragraph Three of the Tax Settlement Agreement.

/s/ Mary Siobhan Brennan
Hon. Mary Siobhan Brennan, J.T.C.

11