**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4189-17T4

IN THE MATTER OF JAMES
LEMIEUX, TRENTON
PSYCHIATRIC HOSPITAL.

_____

Argued October 2, 2019 – Decided November 22, 2019

Before Judges Ostrer and Vernoia.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-977.

Mario A. Iavicoli argued the cause for appellant.

Beau Charles Wilson, Deputy Attorney General, argued the cause for respondent Civil Service Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Beau Charles Wilson, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Trenton Psychiatric Hospital, joins in the brief of respondent Civil Service Commission.

PER CURIAM

James Lemieux appeals from a Civil Service Commission final decision

denying his motion to enforce a June 5, 2013 settlement agreement between

Lemieux and his former employer, the New Jersey Department of Human Services (DHS). Based on our review of the record, we are convinced Lemieux's arguments lack merit, and affirm.

I.

The pertinent facts are not disputed. Lemieux was employed by DHS as a business manager at the Trenton Psychiatric Hospital. In 2011, DHS served Lemieux with a final notice of disciplinary charges resigning him not in good standing from his employment. Lemieux appealed and the Civil Service Commission referred the matter to the Office of Administrative Law as a contested case.

During the second day of an April 2013 hearing before an administrative law judge (ALJ), the dispute settled. Lemieux and the DHS entered into a written settlement agreement which "fully dispose[d] of all issues in controversy between them." The agreement provided that Lemieux withdrew his appeal and the DHS withdrew the disciplinary charges. The agreement also provided that Lemieux resigned his employment in good standing effective April 30, 2013, and agreed not to seek any future employment with DHS or its subsidiaries.

DHS agreed to pay Lemieux 268.09 days of back pay from May 13, 2011, record the one-year period following the 268.09 days as "approved medical

leave without pay," and record any other time prior to the April 30, 2013 effective date of his resignation as an "approved leave of absence without pay."

Under the settlement agreement, Lemieux "waive[d] all other claims against [DHS] with regard to [the] matter, including any award of back pay, counsel fees or other monetary relief, except as may otherwise be provided" in the agreement. Lemieux also expressly waived "all claims, suits or actions, whether known, unknown, vested or contingent . . . in law or equity against . . . DHS . . . including but not limited to those which have been or could have been made or prosecuted on account of any conduct of any party occurring at any time." Lemieux's waiver "include[d] all claims involving any continuing effects of actions or practices which arose prior to the date of [the agreement] and bar[red] the use in any way of any past action or practice in any subsequent claims, except pending workers['] compensation claims."

On April 18, 2013, the ALJ incorporated the settlement agreement into a decision and ordered that the parties comply with its terms. The Commission issued a final decision adopting the ALJ's decision.

More than four years later, in September 2017, Lemieux filed a motion with the Commission seeking enforcement of the settlement agreement. More

particularly, in his certification supporting his motion, Lemieux claimed that DHS owed him monies for four separate reasons.

First, Lemieux claimed DHS owed him $34,010.23 for raises he allegedly did not receive from July 2007 through May 1, 2013. He asserted that in 2007, during a period he was involuntarily separated from his employment with DHS, managers received a five percent raise. He further asserted that when he was reinstated in 2010, he was not awarded the 2007 salary increase. In support of his motion to enforce the April 2013 settlement, Lemieux argued that because five percent of his 2007 salary of $87,618.14 is $6,380.91, he was owed $34,010.23 for the five years and four months from 2007 through his agreed upon retirement date of May 1, 2013, that he was denied the benefit of the salary increase.

Second, Lemieux asserted that although he was paid approximately $3,500 for unused sick leave following the April 2013 retirement, he "believe[d] he had [eighty-five] days of unused sick leave when he retired." He further averred his sick leave payment should have been calculated on the salary of $93,999.05 that he should have received based on the 2007 increase to which he claimed entitlement. Based on that salary and his belief about the number of days of unused sick days he had when he retired, Lemieux claimed that he was

A-4189-17T4

entitled to "payment of the maximum statutorily allowable of $15,000 for his unused sick leave," and that DHS breached the settlement agreement by paying him only "approximately $3,500." Thus, in his motion to enforce the settlement agreement, he sought $11,500 for payment of unused sick days.

Third, Lemieux contended that DHS violated the settlement agreement by withholding $17,940 from the back pay due under the agreement. The sum was withheld for reimbursement of unemployment compensation benefits Lemieux received during the period he was unemployed following the 2011 service of the disciplinary charges until his April 30, 2013 resignation pursuant to the settlement agreement.

Last, Lemieux requested that DHS be directed to reimburse him $38,273.03 for medical bills and insurance premiums presumably incurred at some time prior to his April 30, 2013 resignation. Other than making the reimbursement request in his notice of motion, Lemieux provided no further facts, information, or data supporting that claim.

The DHS did not respond to Lemieux's motion to enforce the settlement agreement. The Commission considered the motion and, in a detailed written final agency decision, denied Lemieux's requests for relief. The Commission rejected as untimely Lemieux's claim he was wrongfully denied a 2007 salary

increase. The Commission found Lemieux returned to work in 2010, knew at that time his salary had not been increased since his departure in 2006, and failed to challenge the purported wrongful denial of the salary increase within the twenty-day deadline prescribed in N.J.A.C. 4A:2-1.1(b). The Commission also noted that the 2007 salary increase received by other managers in 2007 was discretionary, and that Lemieux did not and could not establish that he would have received it.

The Commission further rejected Lemieux's claim he was entitled to an additional $11,500 payment for accrued sick leave, finding he presented no competent evidence the $3,500 he received was calculated in error. The Commission found Lemieux's claim was based solely on his "belief" he was entitled to eighty-five days of sick leave, and DHS's records demonstrated he was entitled to only the twenty-six-and-three-quarter days for which he received full payment following the settlement agreement.

The Commission also found that it did not have jurisdiction to determine the amount of back pay owed to Lemieux under the settlement agreement or the amount DHS could properly deduct for unemployment compensation benefits received by Lemieux during his period of separation from DHS. The Commission noted, however, that N.J.A.C. 4A:2-2.10(d)(3) requires that a

backpay award shall be reduced by the amount of money actually earned, including unemployment compensation benefits received, during the period of separation and as such, DHS was required to deduct the $17,940 Lemieux claimed.

Last, the Commission rejected Lemieux's assertion he was entitled to $38,273.03 for reimbursement of unspecified medical bills and insurance premiums. The Commission found Lemieux failed to provide any documentation concerning the alleged expenses and that he waived any claims for "back pay, counsel fees or other monetary relief" in the settlement agreement.

The Commission denied Lemieux's motion to enforce the settlement agreement. This appeal followed.

II.

Our review of final administrative agency decisions is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). We must be "mindful of, and deferential to, the 'agency's expertise and superior knowledge of a particular field,'" id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)), and we will not interfere with a final agency decision unless it is "arbitrary, capricious, or

unreasonable, or . . . lacks fair support in the record." In re Herrmann, 192 N.J. 19, 28 (2007). In our review, we consider only:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011))].

The burden of demonstrating that the agency's action is arbitrary, capricious, or unreasonable rests upon the person challenging the decision. In re Tukes, 449 N.J. Super. 143, 156 (App. Div. 2017). However, we are not bound by an agency's interpretation of a statute or a legal issue. Mondsini v. Local Finance Bd., 458 N.J. Super. 290, 297 (App. Div. 2019).

Based on our review of the record, we discern no basis to conclude that the Commission's decision is not supported by substantial credible evidence, violates any legislative policies, or could not reasonably have been made based on the relevant factors. Contrary to his arguments on appeal, Lemieux failed to demonstrate DHS violated the settlement agreement. We therefore affirm the

Commission's decision substantially for the reasons set forth in its detailed written decision.  We add only the following comments.

There is a strong public policy favoring settlement of litigation, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), and we "strain to give effect to the terms of a settlement wherever possible," Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)).  A settlement agreement between parties is a contract governed by basic contract principles, Nolan, 120 N.J. at 472, and, "absent a demonstration of 'fraud or other compelling circumstances,'" a court should enforce a settlement agreement as it would any other contract, Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)).  A court will not "rewrite or revise an agreement when the intent of the parties is clear," Quinn v. Quinn, 225 N.J. 34, 45 (2016), and "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."  Ibid.

Here, Lemieux settled his claims against DHS and the terms of the settlement were plainly set forth in the settlement agreement.  His motion before

the Commission sought only enforcement of the settlement agreement. Neither the plain language of the settlement agreement nor the purported evidence supporting the enforcement motion support Lemieux's claims.

When Lemieux was reinstated in 2010, and later when he entered into the 2013 settlement agreement, he knew he had not received a 2007 salary increase, and the agreement makes no provision for its payment. To the contrary, Lemieux expressly waived any claim for compensation for back pay that was not otherwise expressly provided for in the settlement agreement and also waived "all claims involving any continuing effects of actions . . . which arose prior to the date of" the agreement. His claim to enforce the settlement agreement to direct payment of the 2007 salary increase represents nothing more than a belated effort to obtain monies DHS never agreed to pay in the 2013 settlement agreement, and which Lemieux waived.

Similarly, the settlement agreement did not require that DHS pay Lemieux an additional $11,500 for unpaid sick pay benefits. The agreement makes no provision at all for the payment of sick pay benefits. Thus, although DHS paid Lemieux approximately $3,500 for unused sick leave, DHS was not obligated to make any additional payments for sick pay under the settlement agreement. Moreover, as the Commission correctly noted, Lemieux's sick leave claim is not

founded on competent evidence; he offered nothing more than his "belief" he was entitled to additional payment for unused sick leave.

Lemieux's claimed entitlement to reimbursement for purported medical expenses and insurance premiums suffers from the same fatal infirmities. The claim is unsupported by any evidence, the settlement agreement does not require the payment, and Lemieux waived all claims for compensation and benefits not expressly provided for in the settlement agreement.

Lemieux's claim the DHS improperly withheld $17,940 for reimbursement of unemployment compensation benefits also lacks merit. Although the deduction is not expressly authorized by the settlement agreement, the Commission found, and DHS argues, the deduction is legally mandated under N.J.A.C. 4A:2-2.10(d)(3). The regulation provides that where the Commission awards back pay as the result of a reversal or modification of a suspension, "the award of back pay shall be reduced by the amount of money that was actually earned during the period of separation, including any unemployment insurance benefits received," subject to limitations not applicable here. N.J.A.C. 4A:2-2.10(d)(3).

Lemieux does not dispute the applicability of the regulation.[1]  Instead, Lemieux argues only that the deduction authorized for unemployment benefits received is limited to benefits collected during the period covered by the

---

[1] The regulation provides that where the Commission "reverse[s]" a "disciplinary penalty," it "shall award back pay, [and] benefits," and that back pay and benefits "may be awarded when a disciplinary penalty is modified." N.J.A.C. 4A:2-2.10(a).  The regulation further provides that "[b]ack pay shall include unpaid salary, including regular wages, . . . increments and across-the-board adjustments" and "[b]enefits . . . include . . . sick leave credits and additional amounts expended by the employee to maintain his or her health insurance coverage during the period of improper suspension or removal." N.J.A.C. 4A:2-2.10(d).  Lemieux did not assert before the Commission and does not argue on appeal that he is entitled under the regulation to increments and across-the-board adjustments, sick leave credits, or amounts expended to maintain his health care coverage during his suspension; he argues only that he is entitled to such benefits under the settlement agreement.  As noted, his claims for the 2007 salary increase, sick pay benefits, and reimbursement for health care costs and insurance premiums are untethered to any language in the settlement agreement and are undermined by the agreement's waiver provisions. Issues not raised in the agency proceedings or not raised in a party's brief on appeal are deemed waived.  See In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008) (noting we will not consider on appeal issues not raised before an administrative agency unless they are of public importance); Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that an issue not briefed on appeal is deemed waived).  However, even if Lemieux asserted his claims under the regulation, they were properly rejected because: he failed to present any evidence the 2007 increase was an across-the-board salary increase and his claim to the increase is otherwise time-barred; the 2007 salary increase did not take place during the period of suspension that is the subject of the settlement agreement; he failed to provide any evidence supporting his claim he is entitled to additional sick pay benefits beyond those for which DHS made payment to him; and he produced no evidence he incurred the expenses claimed for the health care and insurance premium costs.

A-4189-17T4

backpay payment under the settlement agreement. Lemieux argues that because the agreed upon back pay covers only 268.09 days of the period from 2011 through April 30, 2015, he was not working for the DHS, the unemployment benefits deduction should have been limited to only the benefits he received during the back pay period. We find no support for Lemieux's position in the plain language of the regulation; it requires a deduction from back pay for unemployment compensation benefits "actually earned during the suspension," not during the period covered by a back pay award. Thus, DHS was required to withhold $17,940 for the unemployment compensation benefits, and it did not breach the settlement agreement by doing so.

In sum, Lemieux's motion to enforce the settlement agreement was correctly denied because he failed to establish that DHS breached any of the agreement's terms. The Commission's decision is supported by substantial credible evidence, and Lemieux otherwise failed to establish the decision is arbitrary, capricious, or unreasonable. Any of Lemieux's arguments we do not expressly address are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4189-17T4